IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE ANN McDONALD, | ) | |
| AIS #212545, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06-CV-112-MHT |
| | ) | [WO] |
| | ) | |
| FRANK ALBRIGHT, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

This case is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Charlotte Ann McDonald ["McDonald"], a state inmate, on February 2, 2006.[1] In this petition, McDonald challenges a conviction for murder entered against her by the Circuit Court of Dale County, Alabama on May 18, 2000.[2] This conviction became final by operation of law on November 29, 2001.

In accordance with the orders of this court, the respondents filed answers in which they argue that McDonald's federal habeas petition is barred by the one-year period of

---

[1] Although the present petition was stamped "filed" in this court on February 6, 2006, it is clear that McDonald submitted the petition for mailing prior to this date. The law is well settled that a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). In light of the foregoing and for purposes of proceedings herein, the court considers February 2, 2006 as the date of filing.

[2] The victim was McDonald's common-law husband, Thomas Cullen Pope.

limitation applicable to 28 U.S.C. § 2254 petitions.[3] The respondents contend that because McDonald's murder conviction became final in 2001 -- after the effective date of the statute of limitations -- McDonald must have filed her § 2254 petition within a year of this conviction becoming final, exclusive of the time that any properly filed state post-conviction petition related to the conviction remained pending in the state courts. The respondents concede that on March 7, 2002 McDonald filed a state post-conviction petition under Rule 32, *Alabama Rules of Criminal Procedure*, which tolled the limitation period. However, the respondents maintain that even allowing tolling of the federal limitation period during the pendency of the Rule 32 petition, the limitation period expired prior to McDonald's filing this federal habeas petition. *Respondents' Answer* at 8-9; *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) ( statutory tolling allowed only for the time during which a properly filed state post-conviction action is pending).

Based on the limitation argument set forth by the respondents, the court entered an order advising McDonald she had failed to file her § 2254 petition within the one-year period of limitation established by 28 U.S.C. § 2244(d)(1). *Order of April 12, 2006 - Court Doc. No. 19* at 2-4. This order also allowed McDonald an opportunity to show cause why her federal habeas petition should not be barred from review by this court as untimely filed. *Id.* at 4-5. In response to this order and in previously filed documents, McDonald contends

---

[3]Title 28 U.S.C. § 2244(d)(1) sets forth the one-year period of limitation. This section is contained within the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") which became effective on April 24, 1996.

this court should ignore the untimeliness of her petition because she is actually innocent of murder. McDonald, as she did in the state court proceedings, bases her claim of innocence upon testimony and other evidence presented at trial which indicated that her nephew, Eddie Roy Pope, Jr., murdered the victim. McDonald also alleges that a November 7, 2005 affidavit executed by her nephew's former wife, Kelly Cannon, suggests "petitioner's innocence of murder" and establishes that Cannon provided "tainted testimony [which] was coerced...."[4] *Petitioner's April 26, 2006 Response - Court Doc. No. 20* at 4. McDonald further contends that Cannon's statements that McDonald made no threats on anyone's life "or knew that the Co-defendant Eddie Pope had ill intentions in mind toward [the victim] on the day" of the murder constitute new evidence supporting her allegation of innocence. *Id.* at 5. Additionally, McDonald argues this court should allow equitable tolling of the limitation period due to her limited knowledge of the law and the lack of anyone in the prison system with adequate legal knowledge to assist her.

Upon review of the pleadings filed by the parties, the undisputed state court record and applicable federal law, the court determines no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes the present habeas petition is due to be denied as McDonald failed to file the petition within the applicable one-year period of limitation.

---

[4] At the time of the victim's murder and throughout McDonald's trial, Kelly Cannon is identified as Kelly Pope.

## II.  DISCUSSION

### A.  Actual Innocence - Independent Claim

McDonald argues she is entitled to federal habeas relief because she is actually innocent of murder.  McDonald bases this assertion on the defense she employed at trial – i.e., her contention that her nephew committed the acts which resulted in the victim's death.  The law is well settled "that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'  *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial.  'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.'  *Id.*"  *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002).  Thus, McDonald is entitled to no relief from this court on her independent claim of actual innocence.

### B.  Actual Innocence - Gateway to Excuse Time Bar

This court must determine whether McDonald has made a showing of actual innocence before addressing the respondents' assertion that the claims for federal habeas relief are barred by the statute of limitations.  *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000).  "To establish actual innocence, [a habeas petitioner]

4

must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted [her].' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States,* 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." *Id.* at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support [her] allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." 513 U.S. at 324.

    On direct appeal, the Alabama Court of Criminal Appeals summarized the evidence presented during McDonald's trial as follows:

.... On January 28, 1997, [Eddie Roy Pope, Jr.] was interviewed, and McDonald was questioned shortly thereafter at the Midland City Police Department. In her statement, McDonald stated that, one night in 1991, she, Pope, Pope's wife, and the victim were at "the residence," and Pope killed the victim while she and Pope's wife were outside smoking. McDonald said that they then placed the victim's body in the back bedroom and that she solicited the aid of [Robert] Harrell [, McDonald's ex-husband,] in disposing of the body that same evening.

[A deputy sheriff] subsequently drove Harrell and Pope to Florida Highway 2 because both men had independently stated that [the victim's] body had been left in that area some six years prior. Over a three-day period, authorities used trained dogs to search three acres of property, but could not find the victim's body, presumably because the highway had been moved in the six years since Harrell and Pope disposed of the body, and the body quite possibly was excavated during the highway construction.

* * *

Pope testified that he was an inmate at Easterling Correctional Facility as a result of this case. Pope stated that, one night in March 1991, he and his wife went to McDonald's house for dinner. McDonald, the victim, and McDonald's [now deceased] son were present. At one point, McDonald and the victim began arguing, and Pope stepped between them. Pope then went to the kitchen as the argument continued. Pope returned to the living room and saw McDonald with a stone in her hand, and the victim was lying on the couch, unconscious and bleeding from the head. Pope helped McDonald carry the victim's body to the back bedroom. McDonald then called Harrell, and Harrell arrived approximately an hour later. Pope and Harrell took the body to Florida and buried it....

* * *

Harrell testified for the defense. He testified that, on the night in question, Pope called him to come over to McDonald's house. When Harrell arrived at McDonald's home, McDonald was present. Eventually, Pope showed him the victim's body wrapped in a blanket and tied with a rope in the back bedroom and asked Harrell how much he would charge to bury it. Harrell testified that Pope claimed to have hit the victim in the head to protect McDonald. On cross-examination, Harrell stated that, as Pope, Pope's wife, McDonald, and he sat around the kitchen table and discussed what to do with the victim's body, McDonald "went and got her purse and handed" Pope $200 to pay Harrell to bury the body. No one, including McDonald, suggested calling the police. Harrell sold the victim's truck at the direction

of Pope and McDonald. After Harrell sold the truck, he gave the money to McDonald. Harrell lived with McDonald in South Carolina for some time after the victim's disappearance.

McDonald, testifying in her own defense, stated that, after she told Pope that he would have to become more self-supporting and less financially dependent on her and the victim, Pope hit the victim in the head twice and choked the victim. McDonald testified that she suggested calling the police or an ambulance, but Pope ripped the telephone from the wall. Pope then wrapped the victim in a blanket and carried him to the back bedroom. McDonald testified that Pope threatened her to keep quiet and that the $200 paid to Harrell to bury the body came from the victim's wallet. McDonald admitted to cashing checks [from the victim's bank account] in May 1991, but testified that Pope and his wife wrote the checks and made her cash them. McDonald testified that she did not burn the victim's belongings, but saw Pope and his wife burning them. McDonald stated that Pope told Harrell to sell the victim's truck....

On rebuttal, Pope's wife testified that she was asleep in another bedroom during the argument. She testified that, when she woke up, Harrell was there, and Harrell and Pope left while she and McDonald stayed at the house. She testified that she saw McDonald burn the victim's belongings in a grill in her backyard. Pope's wife also testified that she saw McDonald forge checks that belonged to the victim and use the victim's credit card.

*Respondents' Exhibit D - Court Doc. No. 16-8 at 1-3.*

McDonald's allegations of actual innocence based on conflicting testimony presented by witnesses at trial is not new evidence. By her own admission and as is clear from the state court record, the evidence indicating that Eddie Roy Pope, Jr. committed the murder is the same evidence on which McDonald relied during her trial. Specifically, on several occasions during his testimony, Eddie Roy Pope, Jr. acknowledged he had provided both written and verbal statements to law enforcement officials in which he admitted committing actions which resulted in the death of the victim. Pope also conceded the

contradictory nature of his written statements and his testimony at McDonald's trial. Additionally, on cross-examination, counsel extensively questioned Pope regarding testimony he provided during his own trial which indicated Pope had in some manner caused the victim's death. *Respondents' Exhibit A - Court Doc. No. 16-3* at 89, 93-95. During cross-examination of Tim Byrd, a deputy with the Dale County Sheriff's Department, counsel likewise elicited testimony regarding testimony provided in Pope's prior trial that Pope advised law enforcement officials he killed the victim. *Respondents' Exhibit A - Court Doc. No. 16-4* at 19-20 ("[I]n the other trial ... he, talking about Eddie Roy Pope, said he killed him.... He didn't say [Ms. McDonald], he said 'he killed him.'").

With respect to McDonald's reliance on the affidavit of Kelly Cannon as proof of her actual innocence, the court finds that the information provided in such document does not set forth new, reliable evidence of McDonald's actual innocence of murder. Cannon's affidavit, in pertinent part, reads as follows:

> Last Month I felt compelled to try to make things right on My part in Charlotte McDonalds wrongful conviction of Murder. It has been bothering me for years. The District Attorney at the time of the trial, threatened Me in an unlawful way to make me take the stand so He could put His slanted point of view in to the Mix. I was already afraid of Eddie Roy, and the District Attorney did not give Me any options or choice but to testify. I know without a doubt that Charlotte McDonald never made any threats on any ones Life, or knew that ... Eddie Pope had ill intentions in mind towards Mr. [Thomas Cullen] Pope on the day [of the murder].

*Petitioner's Exhibit A - Court Doc. No. 2-2*. Initially, the court notes that this affidavit contains no evidence -- new, reliable or otherwise -- relevant to the issue of whether

McDonald participated in the murder of her common-law husband.  Secondly, the affidavit merely reiterates Ms. Cannon's trial testimony alleging the prosecutor threatened to press charges against her if she failed to testify.  *See Respondents' Exhibit A - Court Doc. No. 16-5* at 237-238.   Finally, the statements in the affidavit as to no threats ever being made by McDonald against anyone and McDonald's alleged lack of knowledge regarding Eddie Pope's intentions are purely speculative.  At best, these statements reflect what Cannon, to her knowledge, believed to be true.[5]  McDonald testified on her own behalf and, thus, could have presented the best evidence relative to whether she ever threatened anyone, including the victim.  Moreover, during her testimony, McDonald did, in fact, adamantly deny any complicity with Eddie Pope.

In light of the foregoing, the court concludes McDonald has submitted no "new reliable evidence" to support her assertion of actual innocence nor has she suggested that any such evidence exists to establish his actual innocence so as to meet the standard set forth by *Schlup*.  This simply is ***not*** the extraordinary case where "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.  Rather, the Cannon affidavit exemplifies the sort of "not uncommon" and "unfortunate" occurrence where a prisoner is able to "find someone ... to vouch for [her]."  *Herrera v. Collins*, 506 U.S. 390, 423, 113 S.Ct. 853, 872 (1993)

---

[5]McDonald acknowledges the statements are merely Cannon's personal opinion.  *Petitioner's April 26, 2006 Response - Court Doc. No. 20* at 4.

9

(O'Connor, S., concurring). The petition for writ of habeas corpus is therefore properly analyzed under 28 U.S.C. § 2244(d)(1)(A).

### C. The Federal Period of Limitation

The Anti-Terrorism and Effective Death Penalty Act of 1996 amended the habeas corpus statute to include a one-year period of limitation on petitions of state inmates filed pursuant to 28 U.S.C. § 2254. This limitation period is codified at 28 U.S.C. § 2244(d) and provides that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute clearly directs that the limitation period for filing a 28 U.S.C. § 2254 petition begins to run at the conclusion of direct review or upon expiration of the time for

seeking direct review, whichever is later.  Where a petitioner preserves his right to file a petition for writ of certiorari in the United States Supreme Court, the statute of limitations is tolled during the ninety-day period in which such action may be undertaken. *Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000) ("A judgment does not become 'final by the conclusion of direct review or by the expiration of the time for seeking such review,' *see* 28 U.S.C. § 2244(d)(1)(A), until the Supreme Court has had an opportunity to review the case or the time for seeking review has expired."); *see also* Rule 13.1, *Rules of the United States Supreme Court* (a petition for writ of certiorari may only be filed to review a judgment or order entered by a state court of last resort and must be filed within 90 days of the action undertaken by such state court).  Accordingly, a state court judgment of conviction becomes final under 28 U.S.C. § 2244 when the United States Supreme Court denies certiorari or the time to apply for certiorari expires. *Id.*

In May of 2000, a jury empaneled before the Circuit Court of Dale County convicted McDonald of murder.  The trial court imposed sentence upon McDonald on August 28, 2000.  McDonald filed a direct appeal challenging her conviction and the Alabama Court of Criminal Appeals issued a memorandum opinion affirming such conviction on May 18, 2001. *Respondents' Exhibit D - Court Doc. No. 16-8.*  The appellate court overruled her application for rehearing on June 22, 2001. *Respondents' Exhibit F - Court Doc. No. 16-10.*  McDonald subsequently filed a petition for writ of certiorari with the Alabama Supreme Court which the court denied on August 31, 2001. *Respondent's Exhibit H -*

11

*Court Doc. No. 16-12*. The certificate of judgment therefore issued on this same date. *Id*. McDonald did not further appeal her murder conviction. Consequently, this conviction became final on November 29, 2001 -- ninety (90) days after the Alabama Supreme Court's entry of judgment affirming the conviction -- as this is the date on which the time expired for McDonald to file a petition for writ of certiorari with the United States Supreme Court. *Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000), *cert. denied*, 531 U.S. 1166, 121 S.Ct. 1129 (2001). The one-year period of limitation contained in section 2244(d)(1)(A) therefore began to run on this date.

    **1. Statutory Tolling of the Limitation Period**. Title 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." The court finds that the limitation period ran for 97 days after McDonald's murder conviction became final until the filing a Rule 32 petition in the Circuit Court of Dale County on March 7, 2002. *Respondents' Exhibit I - Court Doc. No. 16-13* at 12. The trial court conducted an evidentiary hearing on this petition and thereafter issued an order denying McDonald's request for post-conviction relief on November 6, 2002. *Respondents' Exhibit I - Court Doc. No. 16-14* at 1-5. This petition remained pending in the state courts until June 10, 2003 upon issuance of the certificate of judgment by the Alabama Court of Criminal Appeals affirming the denial of the post-conviction petition. *Respondents' Exhibit M -*

*Court Doc. No. 16-18*. Thus, as of the aforementioned date, the petitioner had 268 days of the applicable limitation period remaining within which to file a federal habeas petition.

**2. Equitable Tolling of the Limitation Period**. Case law directs that the limitation period "may be equitably tolled" on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000); *Knight v. Schofield,* 292 F.3d 709, 711 (11th Cir. 2002). "Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States District Court,* 128 F.3d 1283, 1288 (9th Cir.1997). Such tolling applies only in truly extraordinary circumstances. *Jones v. United States*, 304 F.3d 1035, 1039-1040 (11th Cir. 2002); *Drew v. Department of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew*, 297 F.3d at 1286; *see Helton v. Secretary for the Dept. of Corrections*, 259 F.3d 1310, 1313-1314 (11th Cir. 2001), *cert. denied*, 535 U.S. 1080, 122 S.Ct. 1965, 152 L.Ed.2d 1025 (2002).

McDonald argues equitable tolling is justified because she has limited knowledge of the law and no one with adequate legal knowledge was available to aid her in the preparation of a habeas petition. Under applicable federal law, these allegations do not

entitle McDonald to equitable tolling of the one-year period of limitation.

The law is well settled that an inmate's lack of legal knowledge, her failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling. *United States v. Sosa,* 364 F.3d 507, 512 (4th Cir. 2004) (pro se status and ignorance of the law do not justify equitable tolling); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001) (lack of legal knowledge or legal resources, even in a case involving a pro se inmate, does not warrant equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) (a petitioner's pro se status and ignorance of the law are insufficient to support equitable tolling of the statute of limitations); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 1999), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000) (ignorance of the law and pro se status do not constitute "rare and exceptional" circumstances justifying equitable tolling); *Smith v. McGinnis*, 208 F.3d 13, 17 (2nd Cir.), *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000) (petitioner's pro se status throughout most of the period of limitations does not merit equitable tolling); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999) (unfamiliarity with the legal process during the applicable filing period did not merit equitable tolling); *Wakefield v. Railroad Retirement Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law "is

not a factor that can warrant equitable tolling.").

With respect to McDonald's claim regarding the lack of knowledgeable inmate assistance as a basis for equitable tolling, this assertion fails to merit such tolling. A petitioner's reliance on the assistance and/or erroneous advice of an inmate clerk fails to establish extraordinary circumstances necessary to excuse the untimely filing of a petition. *See Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir.), *cert. denied*, 498 U.S. 834 (1990) (poor advice from inmate law clerks during collateral proceedings will not establish petitioner's claim of cause for a procedural default as there is no right to legal counsel in such proceedings); *Marsh*, 223 F.3d at 1220 ("The fact that an inmate law clerk was assisting in drafting [pleadings] does not relieve [petitioner] from the personal responsibility of complying with the law."). Moreover, neither an alleged inadequate prison law library nor limited access thereto establishes extraordinary circumstances warranting an equitable tolling of the limitation period. *Felder*, 204 F.3d at 171; *Marsh*, 223 F.3d at 1220.

McDonald has presented no extraordinary circumstances which warrant equitable tolling. Thus, the limitation period began to run again on June 11, 2003 upon final resolution of the Rule 32 petition by the state courts and ran uninterrupted for 268 days until it expired on March 4, 2004.

**3. Expiration of the Limitation Period**. McDonald filed the instant federal habeas petition on February 2, 2006. Under the circumstances of this case, the one-year period of

15

limitation contained in 28 U.S.C. § 2244(d)(1) expired on March 4, 2004, over a year and ten months after expiration of the limitation period. McDonald has failed to show cause why this petition should not be dismissed as untimely filed.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The petition for habeas corpus relief filed by Charlotte Ann McDonald be denied as McDonald failed to file the petition within the one-year period of limitation set forth in 28 U.S.C. § 2244(d)(1).

2. This case be dismissed with prejudice.

It is further

ORDERED that on or before March 24, 2008 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 12th day of March, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE